**ELLIS, Plaintiff-Appellant, v. HORN, Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3558.   Decided March 18, 1953.

Sieman, Sieman & Sieman, Warren, for plaintiff-appellant.
Howard A. Mills, Niles, John D. Ray, Beaver Falls, Pennsylvania, for defendant-appellee.

## OPINION

Per CURIAM.

Lake Milton is an elongated shaped artificial body of water situated in Milton Township, Mahoning county, Ohio, where it was built and is maintained by the city of Youngstown, a municipal corporation, which by duly enacted ordinances regulates traffic moving thereon.

Ohio State Route No. 18, which extends in an easterly and westerly direction in Mahoning county, crosses Lake Milton by a bridge supported by concrete piers.

On the afternoon of July 14, 1951, plaintiff was operating a motor driven fishing boat and defendant was operating an inboard motor boat carrying three passengers, and hauling his son who was riding on water skis, in a general southerly direction on Lake Milton in the vicinity of the bridge, to which reference has been made, when they collided.

As the result of that collision plaintiff sued defendant in the court of common pleas to recover for damages to his person and property. The jury returned a verdict for defendant, upon which the trial judge duly entered judgment, from which plaintiff appealed to this court on questions of law.

Plaintiff's evidence is that at the time of collision he was operating his motor boat in line with the most easterly supporting pier of the bridge (which was situated 142 feet west

of the easterly shore of Lake Milton) at a place 150 to 200 feet west and 175 to 200 feet north thereof, at a speed of three to five miles an hour, preparatory to entering trolling speed, at which speed such boat would barely move; that defendant's watercraft was following his boat to the right thereof at a speed of 30 to 35 miles an hour, which speed it maintained until it made a sharp left turn and struck plaintiff's motor boat, damaging it and injuring him; that during all of the time prior to collision defendant was not keeping a lookout ahead, although his vision in the direction he was proceeding was unobstructed.

Defendant's evidence is that as he approached the scene of the collision at a speed from twelve to fifteen miles an hour at a place about 462 feet from the easterly shore line of Lake Milton, he observed plaintiff and his companion, about 300 feet ahead, untangling fishing lines, while plaintiff was operating his motor boat without keeping a lookout ahead; that as he came closer to plaintiff's boat plaintiff suddenly and without keeping a lookout ahead, or giving warning, changed the course of the craft he was operating from south to due west into the path of the motor boat defendant was operating; that he saw that change of course, swerved his boat to avoid the collision, and did everything he could to avoid the collision but struck the side of plaintiff's craft, at an angle, when about 200 feet north of the bridge spanning Ohio State Route 18, and about 462 feet west of the easterly shore line of the lake, where, in accordance with an ordinance of the city of Youngstown, he had a legal right to be; and that plaintiff's breath smelled strongly of alcohol.

We find no ground for plaintiff's contention that "the court committed reversible error in permitting the introduction of improper evidence and excluding proper evidence offered by plaintiff."

Counsel for plaintiff charges "misconduct on the part of defendant's counsel and irregularity in the proceedings of defendant and his counsel by improper interrogation of plaintiff as to how and when he employed his counsel, and why he filed his lawsuit within ten days of the collision"; and complains of defense counsel's argument to the jury:—

"I said this is one of the most claim-conscious plaintiffs I have ever come in contact with in some 23 years' experience in courts and it is very rare that a plaintiff files and swears to a completed complaint within ten days after the accident and before he is discharged from the hospital."

We find nothing so prejudicial in this statement as to warrant reversal.

In cross-examining one of defendant's witnesses counsel for plaintiff stated by way of interrogation: "So you personally don't know what direction either of the boats were going from that point on—." The court sustained an objection to the question on the grounds that "it is an utterly unfair conclusion from the man's testimony. Further it is argumentative."

The testimony of defendant's witness, the Superintendent of Parks of the City of Youngstown, was taken in the absence of the jury. Counsel for the respective parties had reviewed the investigation files of that witness, and of the Law Department of the city of Youngstown; and counsel for plaintiff had removed, secreted, and refused to produce for the perusal of defendant's counsel statements of the Superintendent of Parks.

Without detailing the evidence further we conclude that the trial judge in handling the situation presented to him can not be charged with "abuse of discretion in the conduct of the trial and the assumption by the trial court of the right to comment upon the evidence in a manner prejudicial to the plaintiff's rights."

In his general charge to the jury the trial judge, so counsel for plaintiff maintains, "erroneously stated that the petition claimed that plaintiff's boat had reached a point three hundred feet from the shore when it was struck by defendant's speedboat. Such was not the fact as the petition stated that it occurred within three hundred feet of the shoreline. This error was a very important one, for under the City Ordinance boats running between one hundred feet to three hundred feet of the shore are not permitted to exceed the speed of fifteen miles per hour, whereas boats operating at a greater speed are not permitted closer than three hundred feet to the shoreline, must yield the right-of-way to other boats and shall pass such boats at a distance not less than twenty-five feet and at a reduced rate of speed to ensure the safety of the passengers therein."

The answer to this complaint is that the trial judge did not erroneously state "that the petition claimed plaintiff's boat had reached a point 300 feet from the shore when it was struck by defendant's speed boat." The trial court stated that in his petition the plaintiff "was riding in a row boat propelled by an outboard motor in a southerly direction toward the bridge over the lake, and when he had reached a point about 100 feet from the bridge and 300 feet from the shore * * *." Following this the court specifically told the jury that in the ordinance of the city of Youngstown there

was a specific requirement that "between 100 and 300 feet of the shore line the speed of a motor boat shall not exceed 15 miles per hour"; and if the jury find that defendant violated this specific requirement "then to that extent you would find the defendant was negligent." This language of the trial judge sufficiently stated that a violation of the specific requirement would constitute negligence per se. We find no merit in the contention of plaintiff in the respect referred to.

By his general charge the trial judge withdrew from the consideration of the jury plaintiff's fifth specification of negligence "with reference to assured clear distance ahead." The trial judge did not err to plaintiff's prejudice in so doing. The assured clear distance ahead statute, §12603 GC, is not applicable to watercraft. The section applies only to vehicles as defined in §6290-1 GC.

Defendant's answer raised the issue of plaintiff's contributory negligence. The trial judge did not err to plaintiff's prejudice in charging on the issue of plaintiff's contributory negligence.

Counsel for plaintiff now contends that the trial judge committed prejudicial and reversible error in withdrawing from the consideration of the jury certain portions of the City Ordinance. There was no error in this respect since the court charged the applicable provisions of the ordinance.

When asked by the trial judge for suggestions on the charge counsel for plaintiff finally said "that is all," and after the jury had retired noted an exception with the court reporter. Error, if any, of omission in the charge was waived by counsel's approval of the charge as submitted.

During deliberation the jury sent the following note to the trial judge: "May we have the court re-read the three specific charges." The jury returned to the court room and the following colloquy between the foreman of the jury and the trial judge ensued:—

"The Court: Do you refer to a portion of the ordinance of the city of Youngstown which I read to you?

"Mr. Foreman: No, sir.

"The Court: That is not it?

"Mr. Foreman: No, sir.

"The Court: Well, I just don't know what you want. Now, do counsel consent I question him a little as to what he does want?

"Mr. Sieman: Yes, sir.

"Mr. Mills: Yes, sir.

"The Court: Can you explain a little further?

"Mr. Foreman: What type of verdict,—you made specific charges and what type of verdict we can render, and it isn't entirely clear to the jury as to what that is. I thought by having it repeated * * *.

"The Court: I dislike, sir, to repeat any part of my charge but I am trying to find out just what you want.

"Mr. Foreman: What type of verdict can we render?

"The Court: only two types of verdict, one reads in favor of the plaintiff and one reads in favor of the defendant, and I told you this in my charge: that if under my instructions and on the evidence you found in favor of the plaintiff you would use the one so entitled, and if you use that you would put in the appropriate place in the form the amount of damages you award; and that the other type of verdict you would use in the event under my instructions and on the evidence you found in favor of the defendant, and you would use this type. Of course that would not involve the question of damages. Does that straighten it out or is there something else you want? Apparently I don't quite get what you want, and this is the first time I couldn't understand what is wanted of me.

"Mr. Foreman: I am afraid * * *.

"The Court: Please, you understand I don't want you to say anything that would involve the state of your negotiations, that would not be proper. Do you think if you go back into the jury room a few minutes you could draft another note to make it a little clearer?

"Mr. Foreman: I believe so. I thought by saying three specific charges * * *.

"The Court: I will try something else again. I said there were four issues in the case.

"Mr. Foreman: That is it.

"The Court: Is that what you are interested in?

"Mr. Foreman: To a certain extent.

"The Court: This is a delicate situation and I want to handle it right.

"Mr. Foreman: May I write another note?

"The Court: You can write me all the notes you want to. You go back and talk to your fellow jurors and draft another note and see if you can enlighten my,—I shall not call it stupidity but enlighten my failure to apprehend. You may retire."

The jury did not send any further note to the judge.

Plaintiff charges the trial judge with:—

"II. Irregularity and errors of law in the proceedings of the court and abuse of discretion and orders of the court by which the plaintiff was prevented from having a fair trial.

"A. Reversible error in refusing to comply with the written request of the jury, submitted during the course of their deliberation, that the court further charge them on the law and explain the court's general charge."

Plaintiff further charges that the trial judge "committed prejudicial and reversible error since a mandatory duty was imposed upon the court under §11420-6 GC" in not rereading the three specific charges nor explaining the four issues to the jury again.

In our opinion the trial judge neither abused his discretion nor committed prejudicial error in the respects charged by plaintiff in the assignment of error under discussion.

The case was submitted to the jury at 3:00 P. M. on May 29th. At 6:15 the trial judge inquired as to the possibility of an agreement, and sent the jury to dinner. The jury resumed deliberation at 7:15 and at 7:32 asked the court to reread a portion of his charge, which was refused. Counsel for plaintiff, being present at the time of such refusal, failed to object or except thereto. Any irregularity was waived. See **Sprung v. Du Pont, 16 O. O. 352, 136 Oh St 94.** The jury deliberated until 10:00 P. M., and returned a verdict in favor of defendant.

Plaintiff charges the trial judge with:—

"Reversible error of the court in refusing the request of plaintiff's counsel to ascertain from the jury whether they could agree upon a verdict when the jury appeared hopelessly deadlocked and in requiring the jury to remain out until it rendered its verdict."

There is nothing in the record of the case we review remotely supporting plaintiff's contention. Accordingly we find no error chargeable to the trial court in the respects urged.

We cannot conclude, as we are urged by the plaintiff, that the verdict of the jury and judgment of the trial court entered thereon are against the manifest weight of the evidence.

The trial judge did not err to plaintiff's prejudice in overruling his motion for a new trial.

We cannot conclude that the verdict of the jury was rendered under the influence of passion or prejudice, or was contrary to law.

We do not find error prejudicial to the plaintiff, and the judgment must be and is affirmed.

GRIFFITH, PJ, PHILLIPS and NICHOLS, JJ, concur.